**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**JOSE R.**

                              **Plaintiff,**                              **21-CV-681Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

─────────────────────────────

<u>**DECISION AND ORDER**</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #10

**BACKGROUND**

Plaintiff applied for disability insurance benefits with the Social Security

Administration ("SSA"), on March 10, 2015, at the age of 34, alleging disability

beginning February 11, 2014, due to a low back injury, leg pain, bilateral hip issues, and

depression. Dkt. #6, p.82. Administrative Law Judge ("ALJ"), Rosanne Dummer

rendered a decision that plaintiff was not disabled on August 8, 2017. Dkt. #6, pp.16-32.

On August 11, 2020, the Hon. Lawrence J. Vilardo determined that the ALJ failed to

provide sufficient reasons for her decision to credit a medical expert over the opinions

of plaintiff's treating physicians and remanded the matter back to the Commissioner for further administrative proceedings. Dkt. #6, pp.725-734.

On January 12, 2021, plaintiff appeared with counsel, along with medical expert, Allan Levine, and vocational expert ("VE"), Marney South, and testified at an administrative hearing by telephone before ALJ Bryce Baird. Dkt. #6, pp.610-679. Plaintiff testified that he has a high school diploma Dkt. #6, p.640. He lives alone in a two story house and only goes upstairs to sleep. Dkt. #6, p.617. He has difficulty getting up from a chair and using the stairs, especially going down. Dkt. #6, pp.642 & 645-646. He is able to sit 20-30 minutes at a time before standing up; stand 15-20 minutes before sitting down; and walk 20 minutes before sitting down. Dkt. #6, pp.620-621. He is unable to engage in any activity for more than 20 minutes before he needs to lie down for 30-40 minutes. Dkt. #6, p.643. He is unable to bend, stoop, squat or crouch. Dkt. #6, p.643. He cannot lift more than 10-20 pounds. Dkt. #6, pp.643-644. He does laundry at the laundromat, makes his bed and takes out the trash. Dkt. #6, pp.618-19. He has difficulty putting his socks on and tying his shoes. Dkt. #6, p.619. He is able to drive. Dkt. #6, p.619. He can go to the grocery store, but gets what he needs and gets out. Dkt. #6, p.620. His mother or friends cook for him. Dkt. #6, p.646.

Dr. Levine, a board certified orthopedic surgeon, testified that plaintiff has chronic back pain and radiating pain to the right leg secondary to a central subligamentous herniated disc at L5-S1. Dkt. #6, p.623. Dr. Levine noted that the most recent MRI, dated March 11, 2017, reveals no evidence of spinal stenosis or neuroforaminal stenosis, but does reveal an indent on the thecal sack of the herniated

-2-

disc. Dkt. #6, p.623. Dr. Levine found no evidence of nerve root or spinal cord compromise and noted that plaintiff's neurosurgeon did not feel plaintiff was a candidate for surgery and that plaintiff declined a spinal cord simulator. Dkt. #6, pp.624-25. Dr. Levine testified that plaintiff's physical examinations were "extremely inconsistent," and noted that certain findings upon examination lacked correlation to the symptoms commonly associated with an L5-S1 disc herniation. Dkt. #6, pp.625-629.

Adjusting for obesity and affording some credence to plaintiff's subjective complaints of pain, Dr. Levine opined that during the relevant time period, plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently. Dkt. #6, p.630. Dr. Levine further opined that plaintiff could sit for 6 hours in an 8-hour day, but not longer than 60 minutes at a time, at which point he would need to stand or walk for two-minutes. Dkt. #6, p.630. He could stand for 3 hours in an 8-hour day, but not longer than 40 minutes at one time before sitting for 2-3 minutes. Dkt. #6, p.631. Plaintiff could walk three hours in an 8-hour day, but not longer than 20 minutes at a time before sitting to 2-3 minutes. Dkt. #6, p.631. Dr. Levine opined that plaintiff could use stairs or ramps occasionally; kneel occasionally; and crouch or stoop occasionally, but should avoid ladders, scaffolds, crawling, heaving machinery, unprotected heights, and extreme cold exposure. Dkt. #6, p.631.

When asked to assume an individual with plaintiff's age, education and past work experience as a demolition worker, machine buffer and line cook with a limitation to lift and carry up to ten pounds occasionally and up to five pounds frequently; who can sit for up to six hours in an 8-hour day and stand or walk for up to

six hours in an 8-hour day, but was limited to walking no more than 20 minutes at one time, and no more than three hours in an 8-hour day, with an option to stand or stretch for up to 2 minutes after sitting for 60 minutes; no more than frequent operation of foot controls bilaterally; occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; no balancing; occasional stooping, kneeling and crouching; no crawling; no exposure to hazards such as unprotected heights and moving machinery; and no more than frequent driving of a vehicle, the VE responded that plaintiff could work as a table worker, ink printer, and dial marker, each of which were unskilled, sedentary positions. Dkt. #6, pp.651-652. If plaintiff was off-task for more than 10% of an 8-hour workday or absent more than one day per month, the VE testified that plaintiff would not be capable of employment. Dkt. #6, pp.652-653.

The ALJ rendered a decision that plaintiff was not disabled on March 1, 2021. Dkt. #6, pp..583-602. Plaintiff commenced this action seeking review of the Commissioner's final decision on May 27, 2021. Dkt. #1.

### DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a).

The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for

the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant

is unable to return to past relevant work, the burden of proof shifts to the Commissioner

to demonstrate that the claimant could perform other jobs which exist in significant

numbers in the national economy, based on claimant's age, education and work

experience. 20 C.F.R. § 404.1520(g).

       In the instant case, the ALJ made the following findings with regard to the

five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity between his application for benefits on February 11, 2014 and his date last

insured on March 31, 2018; (2) plaintiff's degenerative disc disease and obesity

constitute severe impairments; (3) plaintiff's impairments did not meet or equal any

listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] except that

he is restricted to lifting and carrying on occasion up to ten pounds and frequently up to

five pounds, sitting for up to six hours in an eight-hour day with an option to stand or

stretch for up to two minutes after 60 minutes of sitting during which time he would be

off task, standing for up to six hours in an eight-hour day, walking no more than 20

minutes at one time or for more than three hours in an eight hour day, no more than

frequent operation of foot controls bilaterally, no more than frequent driving of a vehicle,

occasional climbing of ramps and stairs, occasional stooping, kneeling and crouching,

no climbing of ladders, ropes or scaffolds, no balancing, no crawling, no exposure to

---

[1]   Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small
tools. Although a sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out
job duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

hazards, such as unprotected heights or moving machinery, and no exposure to excessive vibration or cold; and (5) plaintiff was unable to perform his past relevant work but was capable of working as a table worker, ink printer, and dial marker, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.583-602.

Plaintiff argues that the ALJ erred when he failed to incorporate physical limitations included in the opinion of plaintiff's pain management specialist, Dr. Tracy, into the RFC or explain why such limitations were omitted even though he afforded Dr. Tracy's significant weight. Dkt. #7-1, pp.21-27. Specifically, the ALJ determined that plaintiff could sit for 60 minutes at a time, while Dr. Tracy opined that plaintiff could sit for 20 minutes at a time. Dkt. #7-1, p.24. Plaintiff also argues that the ALJ does not account for discrepancies between Dr. Tracy's opinion that plaintiff could only stand for 20 minutes at a time and Dr. Levine's opinion that plaintiff could stand for no more than 40 minutes at a time. Dkt. #6, p.25. Plaintiff argues that the absence of an explanation as to why the ALJ rejected aspects of Dr. Tracy's opinion constitutes plain error which cannot be considered harmless and requires remand. Dkt. #7-1, p.27.

The Commissioner argues that the ALJ was not required to adopt the entirety of any one medical opinion into the RFC and that the ALJ provided sufficient reasoning for his RFC determination, which was based upon consideration of multiple medical opinions, as well as objective medical and diagnostic findings, and plaintiff's reported activities of daily living. Dkt. #8-1, pp.7-11.

Plaintiff responds that even when a medical opinion is afforded less than controlling weight, the ALJ is required to provide an adequate explanation for his failure to incorporate the functional limitations set forth in such opinion into the RFC and the ALJ's failure to do so amounted to cherry-picking of the evidence. Dkt. #9.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See. Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

The ALJ provided sufficient explanation for his assessment of the various medical opinions within the record and his determination the plaintiff was capable of

performing sedentary work with additional limitations is supported by substantial evidence. The ALJ's decision includes a careful review of the objective medical evidence and medical opinions, as well as a detailed explanation of the ALJ's rationale for plaintiff's RFC. Dkt. #6, p.596. The ALJ afforded the greatest weight to the opinion of Dr. Levine because his testimony was based upon a thorough review of the entire record as evidenced by his specific citations to the record and explanations for his testimony and RFC, as well as plaintiff's testimony, his expertise as an orthopedic surgeon, and his experience as an expert for the SSA. Dkt. #6, pp.600-601. The benefit of an opinion based upon the overall record is particularly apparent where, as the ALJ recognized, "treating sources offered differing opinions regarding the [plaintiff's] functioning." Dkt. #6, p.597. As noted by plaintiff, for example, plaintiff's primary care provider, Dr. Dorfman, opined that plaintiff could stand and walk up to 20% of his shift (Dkt. #6, pp.337, 339, 343-344), while plaintiff's pain management specialist, Dr. Tracy, opined that plaintiff could sit for 20 minutes, stand for 15 minutes, walk for 20-30 minutes and drive for 30 minutes. Dkt. #6, p.539. In addition, Dr. Beaupin conducted an evaluation for workers' compensation on June 28, 2016 and determined that plaintiff had achieved maximum medical improvement with the ability to perform sedentary to light duty work, including the ability to sit, stand and walk occasionally, which was defined as up to 1/3 of the time. Dkt. #6, p.535. A consultative examination by Dr. Miller on May 7, 2015 did not assess any limitations for sitting, standing or walking. Dkt. #6, p.478. Moreover, the previous medical expert, Dr. Schmitter, opined that plaintiff could sit, stand and walk without interruption up to 4 hours in an 8-hour day. Dkt. #6, p.572. Contrary to plaintiff's argument, this is not a case where the ALJ improperly cherry-

picked evidence, but rather a case where the ALJ appropriately weighed conflicting evidence to determine an RFC that is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **September 29, 2023**

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**